UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD AJANI,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 18-cv-02226-SI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 12, 17

      The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 12, 15. Having considered the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The matter is REMANDED for immediate payment of benefits.

**BACKGROUND**

**I.      Administrative Proceedings**

      In September 2013, plaintiff Richard Ajani applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Administrative Record ("AR") at 152, 365, 372. He alleged a disability onset date of June 5, 2000. *Id.* at 365, 372. His applications were denied originally and upon reconsideration. *Id.* at 282, 287, 298. Plaintiff's applications were then heard by Administrative Law Judge ("ALJ") E. Alis at a hearing on October 27, 2016. *Id.* at 152. The ALJ denied plaintiff's claims in a decision dated January 5, 2017. *Id.* at 163.

      The Appeals Council denied review of plaintiff's claims on March 19, 2018, rendering ALJ Alis's denial the final decision of the Commissioner. *Id.* at 1-4. In denying review, the

Appeals Council considered medical records that plaintiff submitted from Dr. Lisa Kalich, Psy.D., dated January 19, 2017; and from Lifelong Medical Care, dated December 2 through 28, 2016. *Id.* at 2. The Appeals Council found "this evidence does not show a reasonable probability that it would change the outcome of the decision" and so the Appeals Council "did not consider and exhibit this evidence."[1] *Id.* The Appeals Council also reviewed medical records from Alta Bates Emergency dated May 22, 2017, and LifeLong Medical Care dated February 3 through August 24, 2017, but found that these records "do[] not relate to the period at issue" because the ALJ decided plaintiff's case through January 5, 2017. *Id.*

On April 13, 2018, plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Docket No. 1. Plaintiff moved for summary judgment and defendant cross-moved for summary judgment. Docket Nos. 12, 15. Briefing was completed when plaintiff filed a reply on February 22, 2019. Dkt. No. 20.

## II. Medical History

By the time of the administrative hearing, plaintiff was a forty-two-year-old man with at least a high school education. AR at 162, 219, 450. His past work experience included part-time work doing deliveries, as a computer representative, and as a YMCA sales representative, concluding sometime in 1999. *Id.* at 416, 422-23, 435-37. He had not engaged in substantial gainful activity since June 5, 2000. *Id.* at 154. He had been homeless on and off since about 1998 or 1999. *Id.* at 893.

Plaintiff applied for disability benefits on the basis of lupus, breathing problems, and asthma. *Id.* at 216. In his hearing before the ALJ, his attorney stated that he had "severe medical conditions including psoriatic arthritis, moderate to severe persistent asthma, fatigue, general anxiety disorder, and major depressive disorder." *Id.* at 500. He has been diagnosed with asthma, bronchitis, celiac disease, a benign tumor in his back, psoriasis, and psoriatic arthritis. *Id.* at 915,

---

[1] The Court has likewise reviewed the assessment by Dr. Kalich and finds there is no reason to disturb the Appeals Council's decision on this point. Dr. Kalich's assessment repeats much of what is already found elsewhere in the record and its inclusion would not alter the Court's decision in today's Order.

923, 1336. At the hearing before the ALJ, he reported having panic attacks almost daily. *Id.* at 194, 201.

### III.     Medical and Vocational Evidence

Plaintiff's medical records include numerous records from plaintiff's emergency room visits. The records show that plaintiff visited the emergency room over forty times for asthma exacerbation between 2013 and 2016. *See id.* at 1333; Pl.'s Mot. at 2 (citing record). The record also includes treatment notes from LifeLong Medical Care, where plaintiff began receiving treatment in May 2015 and where he began seeing Dr. Matthew Fentress, M.D., beginning in February 2016.

In addition to reviewing treatment records, the ALJ considered the opinions of five non-treating practitioners: Dr. R. Mitgang, M.D., the state agency non-examining physician who rendered an opinion at the agency's initial stage of review on July 2, 2014; Dr. Katherine Wiebe, Ph.D., an examining psychologist who assessed plaintiff on December 1, 2014; Dr. Margaret Pollack, Ph.D., the state agency non-examining psychologist who rendered an opinion at the agency's reconsideration stage of review on February 5, 2015; Dr. Alan Coleman, M.D., the state agency non-examining physician who rendered an opinion at the agency's reconsideration stage of review on February 24, 2015; and Dr. Emily Cohen, M.D., an examining physician who assessed plaintiff on September 7, 2016.

#### A.     R. Mitgang, M.D. (Non-Examining Physician)

In July 2014, Dr. Mitgang rendered an opinion as part of the SSA's initial review of plaintiff's disability application. Dr. Mitgang reviewed medical records from plaintiff's visits to Highland Hospital from September 2013 through February 2014. AR at 229. In assessing plaintiff's physical residual functional capacity, Dr. Mitgang determined that plaintiff had no limitations except the following environmental limitation: that he should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 231-32.

### B.    Katherine Wiebe, Ph.D. (Examining Psychologist)

In December 2014, Dr. Katherine Wiebe, Ph.D., Licensed Clinical Psychologist, assessed plaintiff upon referral by his attorney. *Id.* at 892. During the assessment, Dr. Wiebe noted that plaintiff had a normal affect and normal speech and maintained good eye contact. *Id.* at 895. Dr. Wiebe determined that plaintiff had intellectual functioning in the average range; mild impairment in functioning in attention/concentration/persistence; moderate impairment in executive functioning; severe impairment in memory functioning (in the <0.1 percentile of performance on the RBANS Immediate Memory Index and at the 0.2 percentile of performance on the RBANS Delayed Memory Index); normal language abilities; normal visual/spatial abilities; and mild impairment in sensory/motor abilities. *Id.* at 895-97. She found marked limitations in plaintiff's ability to: understand, remember, and carry out very short and simple instructions; understand, remember, and carry out detailed instructions; respond appropriately to changes in a routine work setting and deal with normal work stressors; complete a normal workday and workweek without interruptions from psychologically based symptoms; and maintain regular attendance and be punctual within customary, usually strict tolerances.[2] *Id.* at 906. Dr. Wiebe concluded that plaintiff's "likely diagnosis" included: Generalized Anxiety Disorder; Major Depressive Disorder, Recurrent, Moderate; Avoidant Personality Traits, Obsessive Compulsive Personality Traits, Depressive Personality Features, and Paranoid Personality Features; and Rule-out Unspecified Neurocognitive Disorder. *Id.* at 902. She stated that plaintiff "would have some difficulties consistently attending to, remembering, and following through with directions and tasks in a job situation." *Id.* She also found that "[h]is psychiatric and personality disorder problems, including relational problems with social avoidance and anxiety, could impair his ability to effectively participate in relationships, including with supervisors, co-workers, and the public in a work environment." *Id.* She further found, "It is considered likely that the combination of Mr. Ajani's cognitive, psychiatric disorder, and somatic symptoms will continue to make him likely unable to

---

[2] The report defined "marked" limitations as indicating that "Mr. Ajani is unable to perform the activity on a sustained basis in a 5 day a week, 8 hour a day, normal work setting." AR at 905.

1   function effectively and consistently in a regular work environment, for two years." *Id.*

2

3   **C.      Margaret Pollack, Ph.D. (Non-Examining Psychologist)**

4       On February 5, 2015, Dr. Pollack conducted a psych case review as part of plaintiff's

5   application for benefits at the reconsideration stage.  Dr. Pollack considered the December 2014

6   assessment from Dr. Wiebe as well as the medical records that were before Dr. Mitgang and Dr.

7   Coleman (see below).  *See id.* at 252-53.  Dr. Pollack concluded that "[m]emory problems appear

8   to pose the most significant limitations on [plaintiff's] functional abilities."  *Id.* at 253.   In

9   assessing plaintiff's mental residual functional capacity, Dr. Pollack found plaintiff markedly

10  limited in his ability to understand and remember detailed instructions and found him moderately

11  limited in the following areas: ability to carry out detailed instructions, ability to maintain

12  attention and concentration for extended periods, ability to complete a normal workday and

13  workweek without interruptions from psychologically based symptoms and to perform at a

14  consistent pace without an unreasonable number and length of rest periods, ability to interact

15  appropriately with the general public, and ability to respond appropriately to changes in the work

16  setting. *Id.* at 258-60.

17

18  **D.      Alan J. Coleman, M.D. (Non-Examining Physician)**

19      On February 24, 2015, Dr. Coleman reviewed plaintiff's medical records at the

20  reconsideration stage of plaintiff's benefits application.  Dr. Coleman reviewed the records that

21  were available to Dr. Mitgang as well as records from the Order of Malta Clinic dated October

22  2013 and May 2014; Alameda County Medical Center records from January 2011; records

23  regarding symptoms of systemic lupus from October 2013 through May 2014; and records from

24  March, May, and July 2014 Emergency Room visits.  *Id.* at 251.  Dr. Coleman concluded that

25  plaintiff did not have systemic lupus, that he may have psoriasis but that he did not seem to have

26  psoriatic arthritis, and that "[h]e does have chronic asthmatic bronchitis for which he needs

27  avoidance of pulmonary irritants."  *Id.* at 253.  In assessing plaintiff's physical residual functional

28  capacity, Dr. Coleman determined that plaintiff was capable of carrying 50 pounds occasionally

5

and 25 pounds frequently, that he could stand or walk more than 6 hours in an 8-hour workday, that he could sit 6 hours in an 8-hour workday, and that he should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation due to his asthma. *Id.* at 256-57.

### E.    Emily Cohen, M.D. (Examining Physician)

In September 2016, Dr. Cohen examined plaintiff for the purpose of providing information to the state disability office for use in making a disability determination. *Id.* at 1332. In doing so, she reviewed medical records from Alameda County Medical Center dated 2007-2016, from the Order of Malta Clinic from 2013-2014, and from Alta Bates Summit Medical Center from 2014-2016. *Id.* Dr. Cohen listed the following impressions: "1) Psoriatic arthritis[;] 2) Moderate to severe persistent asthma, very poorly controlled. Pulmonary function tests pending. Claimant was advised to see his primary care provider for further management as soon as possible[;] 3) Tinea pedis [athlete's foot]." *Id.* at 1336. Dr. Cohen determined that plaintiff could walk and/or stand 4 to 6 hours out of an 8-hour workday, sit for 6 hours in an 8-hour workday, and lift and carry 10 pounds frequently, 20 pounds occasionally, and 50 pounds rarely. *Id.* However, Dr. Cohen explained that "when he is experiencing shortness of breath due to his asthma, he will only be able to walk and/or stand for less than two hours in an eight hour workday and lift about ten pounds." *Id.* Dr. Cohen predicted that plaintiff was "likely to experience these episodes multiple times monthly during cold weather and once monthly at other times." *Id.* She further opined, "I anticipate that he will be absent from work at least three times per month in the winter due to his asthma and polyarthritis flares." *Id.* She found plaintiff's work environment should be free from pulmonary irritants and that he should not be exposed to cold temperatures. *Id.*

### LEGAL STANDARD

### I.    Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review. 20 C.F.R. § 416.1481. The

Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks and citations omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## II.     Disability Benefits

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(1). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id.* The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and

persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

## ALJ'S DECISION

Plaintiff was represented by counsel at the hearing before the ALJ.[3] AR at 152. The ALJ heard testimony from plaintiff as well as from vocational expert ("VE") John P. Kilcher. No medical expert testified.

On January 5, 2017, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act from June 5, 2000, through the date of the decision. In determining plaintiff's disability status, the ALJ applied the five-step disability analysis in accordance with 20 C.F.R. §§ 404.1520(a) and 416.920(a). *Id.* at 153-54. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 5, 2000, the alleged onset date of plaintiff's disability. *Id.* at 154. At step two, the ALJ found that plaintiff suffered severe impairment from asthma, psoriasis, psoriatic arthritis, and an anxiety disorder. *Id.* At step three, the ALJ found that plaintiff's impairments did not meet or equal the severity of any impairment in the Listing of Impairments, including Listings 3.03 (Asthma), 8.05 (Dermatitis), 14.09 (Inflammatory Arthritis), or 12.06 (Affective Disorder). *Id.* at 156-57.

Before proceeding to step four, the ALJ examined plaintiff's RFC. *Id.* at 157. In assessing plaintiff's RFC, the ALJ evaluated plaintiff's testimony and the medical evidence and weighed the opinions of the examining doctors and non-examining doctors. The ALJ gave "great weight" to the conclusions of the state agency non-examining doctors, Dr. Coleman and Dr. Pollack, who

---

[3] The same counsel now represents plaintiff in this appeal.

found plaintiff capable of performing medium work with moderate limitations. *Id.* at 160. The ALJ gave "little weight" to the opinion of state agency physician Dr. Mitgang. *Id.* The ALJ gave "partial weight" to the opinion of examining psychologist Dr. Wiebe, explaining that her conclusions were "inconsistent with the absence of mental health treatment" and "inconsistent with the claimant's reported activities, including his ability to use public transportation, go shopping and go to the bookstore." *Id.* The ALJ also gave "partial weight" to the opinion of examining physician Dr. Cohen, finding that the limitations she found were "out of proportion to the objective medical findings, including the absence of any objective findings on repeated chest x-rays" and that any reliance on a finding of psoriatic arthritis was "equivocal with diffuse joint pain associated with psoriatic arthritis not well-documented in the record." *Id.* As to plaintiff's own testimony, the ALJ determined that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the ALJ found that plaintiff's testimony regarding the symptoms' severity was not entirely credible. *Id.* at 161-62.

In light of the above assessment, the ALJ found plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[4] with the following limitations:

> no concentrated exposure to cold, heat, dampness, work outdoors, fumes, odors, dust, gases or work settings with poor ventilation, but without a need for a clean/sterile environment, and a limitation to work involving simple routine tasks, simple work-related decisions, occasional interaction with supervisors and coworkers, no tandem/team/group work; no interactions with the public, and a need for a stable work environment, meaning that there would be few, if any, changes in the day-to-day work setting, and in the tools and/or work processes used to accomplish tasks.

*Id.* at 157.

Continuing to step four, the ALJ found that plaintiff had no past relevant work. *Id.* at 162.

---

[4] Social Security regulations provide that the term "medium work" has the following definition, mirroring that used in the Dictionary of Occupational Titles:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c), 416.967(a).

At step five, the ALJ relied on testimony from the vocational expert to find that jobs existed in significant numbers in the national economy that plaintiff could perform, and therefore a finding of "not disabled" was appropriate. *Id*. at 162-63.

## DISCUSSION

Plaintiff argues that the ALJ erred in evaluating medical opinion testimony, particularly by giving "partial weight" to the opinions of the examining doctors, Dr. Cohen and Dr. Wiebe, while giving the most weight to the non-examining doctors, Dr. Coleman and Dr. Pollack. Second, he contends the ALJ erred in discrediting plaintiff's testimony by failing to provide specific, clear and convincing reasons based on substantial evidence in the record. Third, plaintiff states that as a result of the above errors the ALJ erred in determining plaintiff's RFC and in finding at step five that plaintiff could perform other work in the national economy. Plaintiff requests the Court order an immediate award of benefits or, in the alternative, remand for further administrative proceedings. Defendant contends that substantial evidence supports all of the ALJ's findings and conclusions and that the ALJ's decision is free from reversible error.

### I.      Medical Opinions

Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Generally, the opinion of a treating physician should be given greater weight than that of an examining or non-examining physician. *Id.* Similarly, an examining physician's opinion usually should be given more weight than that of a physician who has not examined the claimant. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). For claims filed before March 27, 2017, such as plaintiff's, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198. This is necessary "because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison, v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Conclusory statements by the ALJ are insufficient; she "must set forth her own interpretations and explain why they, rather than the doctors', are correct." *Id.* An ALJ errs if he "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

## A.     Opinions Regarding Physical Limitations

Plaintiff argues that the ALJ erred in giving "great weight" to the opinion of non-examining physician Dr. Coleman while giving "partial weight" to the opinion of examining physician Dr. Cohen. In particular, plaintiff challenges the ALJ's rejection of Dr. Cohen's opinions regarding the functional limitations associated with plaintiff's asthma and psoriatic arthritis. Plaintiff also challenges the rejection of Dr. Cohen's opinion that plaintiff's conditions would cause him to miss at least three days of work per month during the winter. For the reasons that follow, the Court finds the ALJ committed error by not sufficiently supporting the weight

given to the medical opinions of Dr. Cohen and Dr. Coleman.

Dr. Cohen's opinion regarding plaintiff's functional limitations was contradicted by Dr. Coleman, who found plaintiff capable of performing medium work with only the environmental limitation of avoiding exposure to dust, odors, gases, etc. As such, in order to give greater weight to the opinion of Dr. Coleman (a non-examining doctor) than to that of Dr. Cohen (an examining doctor), the ALJ needed to "provid[e] specific and legitimate reasons that are supported by substantial evidence." *See Ryan*, 528 F.3d at 1198.

In determining the RFC, the ALJ found, in relevant part:

> . . . I give great weight to the conclusions of State Agency medical consultants Dr. Coleman and Dr. Pollock [sic] who found upon reconsideration of the case that the claimant can perform medium work with moderate limitations in his ability to meet some of the mental demands of work (Exhibit 6A). Their findings are consistent with the record as a whole.
>
> . . .
>
> Partial weight is . . . given to the conclusions by Dr. Cohen. To the extent that they are consistent with the above residual functional capacity finding they are supported by the objective medical evidence of record and the claimant's history. Dr. Cohen's finding that the claimant would generally be limited to lifting of 10 pounds frequently and 20 pounds occasionally, and would be limited to walking/standing for less than 2 hours and lifting 10 pounds when he is short of breath are out of proportion to the objective medical findings, including the absence of any objective findings on repeated chest x-rays. Moreover, to the extent that Dr. Cohen relied upon a finding of psoriatic arthritis and [sic] finding the claimant limited to performing less than a full range of light work, I note that the findings of psoriatic arthritis are equivocal with diffuse joint pain associated with psoriatic arthritis not well-documented in the record.

AR at 160.

The ALJ's assignment of greater weight to Dr. Coleman's opinion than to Dr. Cohen's was erroneous for several reasons. First, it appears the ALJ reached a determination on the RFC and then selectively weighed the medical opinions based on which ones supported the RFC assigned. The ALJ accepted unspecified portions of Dr. Cohen's opinion only to the extent they were "consistent with the above residual functional capacity finding," explaining generally that in this way they were "supported by the objective medical evidence of record and the claimant's history." *See id.* Similarly, the ALJ gave no specific reasons for giving great weight to Dr. Coleman's opinion, stating only broadly that his "findings are consistent with the record as a whole." *See id.*

13

It thus appears that the ALJ weighed Dr. Coleman's opinion more heavily because it comported with the RFC that the ALJ assigned. This was error. The ALJ is charged with evaluating the medical evidence and then using that to determine the RFC, not the other way around. *Cf. Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) ("The ALJ took a backward approach to determining [the claimant's] credibility. . . . To determine the RFC *first* and *then* assess the claimant's testimony is to 'put[ ] the cart before the horse.'") (quoting *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017)).

Second, the reasons that the ALJ gave for partially rejecting Dr. Cohen's opinion are not specific and legitimate nor are they supported by substantial evidence. The only specific reason the ALJ cited for rejecting Dr. Cohen's assessment regarding lifting/carrying limitations and limitations when plaintiff was short of breath was "the absence of any objective findings on repeated chest x-rays." *See* AR at 160. Earlier in the decision, the ALJ elaborates, stating that the "severity of plaintiff's asthma-related symptoms has been variable[,]" citing in part to a series of chest x-rays from December 2002 to April 2016 that "were all unremarkable[.]" *Id.* at 157-58. Plaintiff argues that in doing this, the ALJ has "improperly substituted his own lay medical opinion for that of the examining physician." Pl.'s Mot. at 9. The Court agrees. The ALJ provides no reason why plaintiff's chest x-ray results are inconsistent with Dr. Cohen's assessment regarding asthma-related limitations. To the extent the ALJ understood "unremarkable" chest x-rays to be inconsistent with an asthma diagnosis, that assumption is belied by the medical records themselves. For instance, Dr. Cohen considered chest x-ray results from April 2013 and November 2015 that showed nothing more than "mild pulmonary hyperinflation." *See* AR at 1333. Yet Dr. Cohen still reached the conclusion that plaintiff had poorly controlled, moderate to severe persistent asthma that would limit his ability to walk and stand and lift more than ten pounds multiple times monthly during cold weather and monthly at other times. *See id.* at 1336. Likewise, hospital records show diagnoses of asthma at the same time that chest x-ray results turned up "No acute cardiopulmonary radiographic findings." *See id.* at 708, 711. The ALJ's reliance on unremarkable chest x-rays is not a specific and legitimate reason for rejecting Dr. Cohen's asthma-related findings. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As

1   a lay person, . . . the ALJ was simply not qualified to interpret raw medical data in functional

2   terms and no medical opinion supported the documentation.").

3       The ALJ also rejected Dr. Cohen's opinion to the extent that she relied on psoriatic

4   arthritis to support her conclusion that plaintiff was "limited to performing less than a full range of

5   light work[.]" AR at 160. The regulations define "light work" as "lifting no more than 20 pounds

6   at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R.

7   §§ 404.1567(b), 416.967(b). Light work may also involve a job that "requires a good deal of

8   walking or standing[.]" *Id.* Dr. Cohen assessed plaintiff as being able to perform such light work

9   (e.g., walking and/or standing for 4-6 hours of an 8-hour work day, lifting 10 pounds frequently,

10  20 pounds occasionally, and 50 pounds rarely). AR at 1336. She assessed him as being limited to

11  less than this range "*when he is experiencing shortness of breath due to asthma*[.]" *Id.* (emphasis

12  added). Thus, nothing in Dr. Cohen's functional assessment limits plaintiff to doing less than the

13  full range of light work on the basis of psoriatic arthritis.

14      Nor was the ALJ's outright rejection of Dr. Cohen's impression of psoriatic arthritis

15  supported by substantial evidence. The ALJ rejected this impression, stating that "findings of

16  psoriatic arthritis are equivocal with diffuse joint pain associated with psoriatic arthritis not well-

17  documented in the record." *Id.* at 160. However, in July 2016 treating physician Dr. Fentress at

18  LifeLong Medical Care assessed plaintiff as having psoriatic arthritis despite the fact that plaintiff

19  was "not really complain[ing] of much joint pain, just some clicking[,]" and that the main

20  manifestation of the condition was dermatologic. *Id.* at 1193; *see also id.* at 1188 (same, in

21  August 2016), 1199 (noting rheumatologist's provisional diagnosis of psoriatic arthritis and

22  absence of joint pain, in April 2016). Thus, as with the chest x-rays above, the ALJ appears to

23  have "succumb[ed] to the temptation to play doctor and make [his] own independent medical

24  findings" when the treating and examining physicians in the record noted nothing inconsistent

25  about a diagnosis of psoriatic arthritis without accompanying complaints of joint pain. *See Rohan*

26  *v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

27      The Court further notes that Dr. Coleman had access to only a limited set of medical

28  records that did not include the treatment records from LifeLong Medical Care. Dr. Coleman

15

found in February 2015 that plaintiff "may have psoriasis but that he did not seem to have psoriatic arthritis." AR at 253. But his limited record access undermines both Dr. Coleman's assessment regarding psoriatic arthritis as well as any limitations based on plaintiff's asthma. Dr. Coleman's review did not include any records after July 2014 and so did not include records of plaintiff's more than thirty visits to the emergency room for asthma exacerbation since that date. *See id.* at 1333. As Dr. Cohen noted in her September 2016 review, which did include such records, the records corroborate plaintiff's "report of more frequent exacerbations in the winter months and over the past two years." *See id.*

For all of these reasons, the Court concludes that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for according great weight to the opinion of Dr. Coleman while according partial weight to the opinion of Dr. Cohen. In this way, the ALJ erred.[5]

### B. Medical Opinions Regarding Mental Limitations

Plaintiff also argues the ALJ erred in according "great weight" to the opinion of non-examining psychologist Dr. Pollack while according "partial weight" to the opinion of examining psychologist Dr. Wiebe. As the ALJ did with Dr. Coleman, the ALJ found Dr. Pollack's opinion entitled to "great weight" because it was "consistent with the record as a whole." *See* AR at 160. With regard to Dr. Wiebe, the ALJ determined:

> Partial weight is given to the conclusions by Dr. Wiebe to the extent that they are consistent with the above residual functional capacity assessment as, to that extent, they are consistent with the results of her examination and the record as a whole. To the extent that Dr. Wiebe found the claimant more limited, her conclusions are not persuasive as they are inconsistent with the absence of mental health treatment at any time relevant to the claimant's applications and are also inconsistent with the

---

[5] Defendant forwards a number of arguments in support of the weight the ALJ accorded the various medical opinions. For instance, defendant argues that the records show plaintiff required emergency treatment after he had lapsed in taking his asthma medication, that his asthma improved after treatment, and that plaintiff smoked regularly. However, none of these arguments are ones *that the ALJ provided* in weighing the opinions of Dr. Coleman and Dr. Cohen. Defendant may not now supply a reason for the ALJ's decision that the ALJ himself did not cite, particularly where the ALJ is required to give specific and legitimate reasons to support the finding. This is precisely the sort of speculation that the Court is to avoid on judicial review. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

claimant's reported activities, including his ability to use public transportation, go shopping and go to the bookstore.

*Id.*

Dr. Wiebe found that plaintiff had marked limitations in a number of areas related to his mental abilities and aptitudes needed to do unskilled work and determined that the combination of his "cognitive, psychiatric disorder, and somatic symptoms will continue to make him likely unable to function effectively and consistently in a regular work environment, for two years." *Id.* at 902, 906. Dr. Pollack found plaintiff to have at most moderate limitations, except in his ability to understand and remember detailed instructions, and found that he would adapt best to a stable/routine work-like environment. *Id.* at 258-60. Because Dr. Wiebe's opinion regarding plaintiff's limitations is contradicted by the opinion of Dr. Pollack, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Wiebe's opinion. *See Ryan*, 528 F.3d at 1198. The Court again concludes that the ALJ failed to do so and therefore erred in rejecting the opinion of Dr. Wiebe in favor of that of Dr. Pollack.

The first reason the ALJ gave for rejecting Dr. Wiebe's opinion was "the absence of mental health treatment at any time relevant to the claimant's applications[.]" AR at 160. In *Nguyen v. Chater*, the Ninth Circuit found that the ALJ failed to provide a specific and legitimate reason for favoring the opinion of a non-examining psychologist over that of an examining psychologist. 100 F.3d at 1464. The ALJ had discounted the examining doctor's finding of severe depressive disorder by citing to the non-examining doctor's statement that "the evidence was devoid of any findings or complaints relative to a mental disorder" during a three-and-a-half-year period. *Id.* In reversing and remanding the case, the appellate court quoted from a Sixth Circuit decision, explaining that the claimant "may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* at 1465 (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)); *but see Molina*, 674 F.3d at 1113-14 (finding no error for the ALJ to conclude the level of treatment was inconsistent with the level of complaints, where the claimant failed to follow physician assistant's repeated efforts to persuade her to seek counseling, and claimant failed to assert a good reason for not seeking treatment). Additionally, in

the context of a claimant's pain testimony, the Ninth Circuit has found that an ALJ errs in finding the testimony inconsistent with a lack of treatment, where the record shows the claimant did not seek treatment because he could not afford it. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296-97 (9th Cir. 1999).

The Court concludes that under the circumstances of this case, the ALJ's citation to the absence of mental health treatment does not constitute a specific and legitimate reason for rejecting Dr. Wiebe's findings. For much of the relevant time period, the record is overwhelmingly clear that plaintiff's main access to the medical system was through the emergency room, where he regularly received treatment for his asthma exacerbations and other issues. Plaintiff consistently reported feelings of anxiety and depression, *see, e.g.*, AR at 194, 201, 1188, 1201, 1334, but the record shows that he lacked the means to obtain treatment. Plaintiff was homeless "on and off" since 1998 or 1999. *Id.* at 893. He states that he was uninsured until May 2015, and the records show no consistent primary care treatment before this time. *See* Pl.'s Mot. at 13; s*ee also* AR at 923 (Medi-Cal was cut off). And there are repeated notes from his emergency room visits showing that he did not fill his asthma prescriptions because of a lack of money. *See, e.g.*, AR at 675, 885, 923, 930, 936. Given plaintiff's history of homelessness and lack of consistent, non-emergency medical treatment of any kind, the Court finds that the ALJ erred in relying on the absence of mental health treatment as a basis for rejecting Dr. Wiebe's opinion.[6]

The second reason the ALJ gave for the weight accorded Dr. Wiebe's opinion was that it was "inconsistent with the claimant's reported activities, including his ability to use public

---

[6] Elsewhere in the decision, the ALJ stated that while "Dr. Wiebe . . . diagnosed a major depressive disorder in December 2014, the claimant appeared only mildly depressed at that time and that diagnosis has not been corroborated (Exhibit 8F)." AR at 155. This portion of the assessment states, in full, "His mood was mildly depressed and anxious; he was somewhat tense." *Id.* at 895. For the ALJ to determine that this observation is inconsistent with a diagnosis of major depressive order was an improper substitution of the ALJ's lay medical opinion for that of the examining psychologist. *See Nguyen*, 172 F.3d at 35; *see also Regennitter*, 166 F.3d at 1299 (finding examining expert's diagnoses of major depression, panic disorder, PTSD, and nightmare disorder were not inconsistent with what ALJ characterized as "benign Mental Status Exam," where expert did not call the exam benign and where exams noted claimant "to be tearful and sad, with a monotone and hypophonic voice and psychomotor retardation" and noted "blunted affect and uncontrolled crying").

18

transportation, go shopping and go to the bookstore." *Id.* at 160. The ALJ did not cite the specific source of information for these reported activities, but earlier in the decision the ALJ found that plaintiff had moderate restriction in activities of daily living. *Id.* at 156. The ALJ cited the following:

> The claimant testified that he is able to take the bus or BART to get around, goes to the bookstore, goes shopping and, does his own laundry (see, hearing testimony). He told Dr. Wiebe in December 2014 that the primary reason he could not accomplish activities of daily living, was homelessness (Exhibit 8F/4). In September 2016, he told Dr. Cohen that he could perform his basic activities of daily living including cooking, cleaning, going grocery shopping and doing laundry (Exhibit 13 F/3).

*Id.*

The ALJ's reliance on plaintiff's activities of daily living was not supported by substantial evidence in the record. At the hearing, plaintiff testified that he was able to do the activities the ALJ cited only on certain days when his symptoms permitted and that he structured his daily activities around his symptoms and with the goal of minimizing his asthma attacks. *See id.* at 198. For instance, while plaintiff testified that he "sometimes" goes to visit his mother in Oakland (from Berkeley), and that he does so by bus or BART, he also testified that about "half of the time I'm able to go out and do stuff. But the other half, you know, the medication won't have any effect, and I just stay at home. And I watch TV all day long." *Id.* at 186, 189. He testified that he is sometimes "really fatigued" in the morning from waking up in the middle of the night with an asthma attack. *Id.* at 189. When the ALJ asked what plaintiff does on the days when he can go out, plaintiff testified, "Sometimes I go to the bookstore; watch a movie; I do, you know[,] go to the grocery store. I try to go to the grocery store once a week. A little bit of socializing with my friends. I might go over to a friend's house for an hour or two. Other than that, I'm not too active right now." *Id.* at 189-90. When asked whether he can do his own laundry, plaintiff answered in the affirmative. *Id.* at 190. He later testified that he is unable to leave his home one to three times a week due to fatigue. *Id.* at 197. He also clarified that there were "definitely" days when he was unable to do activities such as grocery shopping, cleaning the house, and doing laundry, because he is "just in a like a catatonic state." *Id.* at 197-98.

In this context, the activities of using public transportation, shopping, and going to the

bookstore are "not consistent with regularly attending a full-time job." *See Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) (analyzing the claimant's activities of grocery shopping, TV watching, and weekly church attendance in the past). As the Ninth Circuit has explained:

> The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, *see, e.g., Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir.1986) (claim of pain-induced disability not gainsaid by capacity to engage in periodic restricted travel); *Gallant*, 753 F.2d at 1453 (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes), and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ's reliance on plaintiff's activities of daily living are not a specific and legitimate reason to discount the opinion of Dr. Wiebe. This is particularly so where the ALJ gave "great weight" to Dr. Pollack's conflicting opinion without any explanation other than a general statement that the opinion was "consistent with the record as a whole." *See* AR at 160.

## II.    Plaintiff's Symptom Testimony

Plaintiff also contends that the ALJ improperly discounted his testimony regarding his intermittently severe symptoms of asthma, fatigue, and anxiety. Pl.'s Mot. at 16.

The Ninth Circuit has established a two-step analysis for determining how to credit a claimant's symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . .

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).[7]   If the ALJ finds the claimant's allegations of severity are not credible, "[t]he ALJ must state specifically which

---

[7] Defendant disputes that the clear and convincing reasons standard applies to review of a

symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (internal quotation marks and citation omitted).

At the first step of the credibility test, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms[.]" AR at 161. The ALJ made no finding of malingering, though the ALJ did reference "some suggestion[] that the claimant has been less than truthful with respect to his reported symptoms as Dr. Fentress observed in April 2016." *See id.* at 161. The ALJ was referencing the following statement from Dr. Fentress's April 21, 2016 treatment notes: "Patient expresses [symptoms] of both depression and anxiety. He also seems overly concerned with his health, although patient may not agree with this. There is even some concern from this interviewer that patient may have tried to get this prescriber to prescribe him toxic treatments for lupus by not telling the full truth about what the rheumatologist told him." *Id.* at 1201. In *Ghanim v. Colvin*, 763 F.3d 1154 (9th Cir. 2014), the Ninth Circuit noted that there is some tension in its case law regarding whether the "specific, clear and convincing" standard applies unless an ALJ makes an actual finding of malingering or whether evidence of malingering will suffice. 763 F.3d at 1163 n.9. In that case, the government did not argue that a lesser standard should apply, and so the Ninth Circuit did not address "whether mere evidence of malingering might justify a lesser standard" and applied the specific, clear and convincing standard. *Id.* Here, defendant has also made no argument on this point, and the Court will likewise apply the specific, clear and convincing standard to this case.

---

claimant's subjective symptom testimony, though defendant acknowledges that this standard is the law of the Ninth Circuit. Def.'s Cross-Mot. at 15 n.6. The Ninth Circuit has repeatedly rejected defendant's position in recent years, reaffirming the continued validity of the clear and convincing reasons standard. *See Brown-Hunter*, 806 F.3d at 493 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014)).

Moving to the second step of the credibility analysis, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 161-62.

**A.      Asthma**

The ALJ discredited plaintiff's "allegations of an inability to perform all work due to asthma-related symptoms" for four reasons: (1) that his "chest x-rays have consistently failed to identify any positive objective findings[;]" (2) "that his medical records document repeated instances in which he sought emergency room treatment for shortness of breath, and other symptoms only after he had been non-compliant with medication that had been prescribed for his asthma[;]" (3) that "while the claimant reported that he has been hospitalized for asthma 'on and off' for the past 25 years, his medical records do not corroborate that report, instead, indicating that the claimant has had no recent hospitalizations on the basis of asthma[;]" and (4) that plaintiff "continues to be compliant [sic] with his physicians' admonitions to stop smoking." *Id.* at 161. The Court will address each of these in turn.

First, the Court does not find the lack of "any positive objective findings" on plaintiffs' chest x-rays to be a clear and convincing reason to find plaintiff's asthma related symptoms not credible, for the reasons explained in Section I.A, above.

Second, as the Court has also noted, the Ninth Circuit has found error where an ALJ discredits a claimant's symptom testimony based on a failure to seek or comply with treatment where the record indicates the failure was rooted in the inability to pay. *See Regennitter*, 166 F.3d at 1296-97. The record here shows numerous instances of plaintiff seeking emergency medical treatment for his asthma because his Medi-Cal was cut off or because he was unable to fill his prescription due to lack of money. *See, e.g.*, AR at 675, 885, 923, 930, 936. Further, the record shows that plaintiff made visits to the emergency room for asthma exacerbation even during periods of compliance with his medication. *See id.* at 505.

Third, the ALJ misinterpreted plaintiff's statements when the ALJ stated that plaintiff reported having been hospitalized for asthma on and off for the past 25 years. *See id.* at 161. In an asthma questionnaire dated November 10, 2013, plaintiff responded to the following question:

> 6. Have you ever been to the emergency room because of an asthma attack? (when and where?)
>
> [Answer:] I've been hospitalized on and off for the past 25 years mainly at Highland Hospital Oakland.

*Id.* at 433. In the context of the overall record and plaintiff's hearing testimony, the ALJ erred in interpreting this answer as saying that plaintiff has required in-patient hospitalization for the past 25 years. The record shows that plaintiff has consistently explained that he makes frequent visits to the emergency room for asthma treatment but that he reported only one hospitalization that required overnight admission (even if his recollection of the year of the hospitalization varies). For instance, at the hearing, plaintiff referred to "one specific time in the hospital in 2006 where I had trouble breathing and they kept me for two days." *See id.* at 193. In a disability report from September 2013, he noted only one overnight hospital stay in 2011. *Id.* at 418. And in his assessment with Dr. Cohen, plaintiff reported that "[h]e has never been intubated and has only had one short hospital admission for an asthma exacerbation. However, he reports that he often has to go to the emergency department for treatment of his shortness of breath . . . ." *Id.* at 1333. What the ALJ cited was a matter of semantics, not credibility. This does not constitute a clear and convincing reason to reject plaintiff's symptom testimony.

Finally, the Court finds that plaintiff's smoking is not a clear and convincing reason to reject plaintiff's testimony, under the facts of this case. Plaintiff testified at the hearing that he smokes "like, one or two cigarettes a day." *Id.* at 204. He reported to Dr. Cohen in September 2016 that he smokes two cigarettes daily and he filed a declaration that he has attempted to quit completely but that the cigarettes help with his anxiety, sometimes preventing a full-blown panic attack. *Id.* at 504, 1334. It appears that the ALJ interpreted plaintiff's smoking as a failure to follow his physicians' prescribed treatment. However, before denying benefits because of a failure to follow treatment, the ALJ must conduct an inquiry into the circumstances of the non-compliance and whether the treatment prescribed can restore the plaintiff's ability to work. *See*

*Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995) (explaining, in response to government argument that the claimant's diabetes would have been controllable if he followed doctors' advice and stopped smoking, that "before basing a denial of benefits on noncompliance, the ALJ must 'examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy' his impairment and must make specific findings") (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)) (alteration in original). "Also '[e]ssential to a denial of benefits pursuant to [the regulation governing need to follow prescribed treatment] is a finding that if the claimant followed her prescribed treatment she could return to work.'" *Id.* (quoting *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)) (alteration in original); *see also Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000) (finding that failure to quit smoking despite evidence that smoking worsened the claimant's condition was not a reason to discredit claimant's testimony, where no evidence supported a finding that claimant would be able to return to work if she stopped smoking). Here, the ALJ failed to conduct this inquiry. Accordingly, the Court finds that plaintiff's smoking is not a clear and convincing reason to reject his symptom testimony.

### B. Psoriatic Arthritis

With regard to plaintiff's "allegations of disabling psoriatic arthritis," the ALJ found that plaintiff's "medical records do not reflect consistent complaints of the diffuse joint paint." AR at 161. The ALJ also cited to Dr. Fentress's note from April 2016 regarding whether he had "been less than truthful with respect to his reported symptoms[.]" *Id.* Neither of these constitutes a clear and convincing reason to discredit the plaintiff. As explained above in Section I.A., Dr. Fentress diagnosed plaintiff with psoriatic arthritis even without noting significant joint pain. Essentially, the ALJ discounted plaintiff's testimony that he had psoriatic arthritis on the basis of a lack of symptoms, where the treating doctor who diagnosed the condition did not find the lack of those symptoms to be preclusive.

It is unclear from the ALJ's decision whether the comment regarding Dr. Fentress's April 2016 note was a reason to discredit plaintiff's allegations of psoriatic arthritis or whether it was a statement regarding plaintiff's credibility overall. If the former, the note is unrelated to psoriatic

24

arthritis. And if the latter, the Court has doubts about whether the note is an indictment on plaintiff's credibility so much as it is a statement regarding plaintiff's psychological state. Dr. Fentress wrote the note in the context of a psychiatric plan, and it appears to support the doctor's perception that plaintiff was "overly concerned with his health[.]" *See id.* at 1201. The Court finds this oblique reference in one treatment note, without further explication from the ALJ, does not rise to the level of a clear and convincing reason to discredit plaintiff's symptom testimony.

In sum, the ALJ did not support the credibility finding with specific, clear and convincing reasons.

## III.    Residual Functional Capacity Finding and Step Five

Finally, plaintiff argues that the ALJ erred with respect to the RFC finding and at step five of the five-step analysis. In light of the errors the Court has found in the ALJ's weighing of the opinions of the examining and non-examining doctors, and in the weighing of plaintiff's symptom testimony, the Court agrees. The ALJ made the above errors in the context of determining plaintiff's RFC, and the RFC does not account for many of the limitations that the examining doctors identified. The failure to determine the correct RFC then led to error at step five, when the ALJ determined that jobs exist in the national economy that plaintiff can perform.

For instance, Dr. Cohen, whose opinion the ALJ improperly discounted, assessed plaintiff as able to lift or carry 10 pounds frequently, 20 pounds occasionally, and 50 pounds rarely. *Id.* at 1136. This is inconsistent with the ALJ's finding that plaintiff had the RFC to perform medium work, which requires lifting or carrying of 25 pounds frequently and 50 pounds occasionally. Dr. Cohen determined that plaintiff would experience shortness of breath due to his asthma multiple times monthly during cold weather and once monthly at other times, and that these episodes would limit him to walking/standing for less than two hours and lifting 10 pounds. *Id.* Critically, Dr. Cohen also determined that plaintiff's asthma and polyarthritis flares would cause him to be absent from work at least three times per month in the winter. The ALJ did not address this limitation anywhere in the decision.

Dr. Wiebe, the examining psychologist whose opinion the ALJ discounted, also found a

number of limitations that the ALJ's RFC finding did not take into account. Again, the ALJ's decision did not address or take into account Dr. Wiebe's assessment that, for example, plaintiff would have marked limitations in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and in his ability to maintain regular attendance and be punctual within customary, usually strict tolerances. *See id.* at 906. The errors the ALJ made in weighing the doctors' opinions and plaintiff's symptom testimony necessarily led to error at the RFC stage and at step five of the disability evaluation.

## IV.    Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (citations and internal quotation marks omitted). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101). Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id.* (citing *Treichler*, 775 F.3d at 1101). In rare instances, all three credit-as-true factors may be met but the record as a whole still leaves doubts as to whether the claimant is actually disabled. *Trevizo*, 871 F.3d at 683 n.11. In such instances, remand for further development of the record is warranted. *Id.*

Here, the Court has already found that the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Cohen and Dr. Wiebe and for rejecting the symptom testimony of plaintiff. The Court further finds that there are no outstanding issues to resolve and that further administrative proceedings would not be useful. The medical record in this case is extensive. There are no gaps in plaintiff's medical records, and the record includes both physical and mental evaluations from examining and non-examining doctors. It also includes extensive emergency room visit records as well as treatment records from the periods of time when plaintiff had access to primary medical care. Defendant does not argue that the record requires further development nor does she identify any outstanding issues to be resolved.

Crediting the discredited testimony as true, there is no doubt as to plaintiff's disability. The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true. *See, e.g.*, *Garrison*, 759 F.3d at 1022; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). In those cases the claimant's counsel presented an alternative hypothetical to the VE that included the claimant's limitations and RFC as described by medical opinion or the claimant's testimony. In each case the VE responded to that hypothetical by saying that a person with those limitations would be disabled. And in each case, the Court found that based on that evidence, the ALJ would be required to find the claimant disabled on remand if the improperly rejected evidence were credited as true.

Here, plaintiff's counsel posed hypothetical questions to the VE that reflected plaintiff's testimony and the opinions of Drs. Cohen and Wiebe as to plaintiff's RFC. Specifically, plaintiff's counsel asked whether there would be jobs in the national economy for someone of plaintiff's "age, education, and work history, limited to lifting and carrying 10 pounds frequently, 20 pounds occasionally, and 50 pounds rarely, most of the time; who is able to stand and walk for six hours per day, and sit for six hours per day; except that they would be absent three times per month during winter or rainy months, and one time per month during other winter months." AR at 211. The VE responded that full-time work would not be available for this person. *Id.* at 211-12.

Plaintiff's attorney also asked whether any of the jobs the VE found were available based on the ALJ's hypotheticals would still be available with the added limitations of moderate impairment in social functioning (i.e., unable to meet competitive standards 15 percent of the time) and in concentration, persistence, or pace (i.e., off task 15 percent of the time of having a 10-15 percent reduction in production accomplishment); and missing two days of work per month. *Id.* at 212. The VE testified that the jobs previously identified would not be available for such a person. *Id.* The VE's testimony provides adequate basis for the Court to conclude that plaintiff is disabled without remanding for further proceedings to re-determine her RFC. *See Garrison*, 759 F.3d at 1022.

Nor does the record as a whole leave "serious doubt that [plaintiff] is, in fact, disabled." *See id.* at 1021. The record shows that plaintiff's asthma would cause serious interference with his ability to maintain a normal work routine. He testified that he usually wakes up in the morning with an asthma attack. AR at 187. He takes three asthma medications each morning and after he takes his medications he waits to see how his symptoms are before proceeding with his day. *Id.* at 187-89. About half the time, the medication has no effect and he is unable to leave home. *Id.* at 189. Plaintiff made numerous visits to the emergency room for treatment for his asthma exacerbation, including times when he was taking his medication, and these emergency room visits increased in the years 2014-2016. *See id.* at 1333.

After considering defendant's arguments, the Court sees no basis for serious doubt in the record that plaintiff is disabled. The plaintiff would have to be found disabled under Title II and Title XVI of the Social Security Act, and thus an award of benefits is appropriate. Moreover, remand for benefits is appropriate here where Plaintiff first applied for benefits over five years ago and has already experienced lengthy, burdensome litigation. *See Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001).

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this case

pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate payment of benefits.

      **IT IS SO ORDERED**.

Dated:  May 14, 2019

SUSAN ILLSTON
United States District Judge